Lynore HORN

v.

SOUTHERN UNION CO. et al.

No. 2006–217–M.P.

Supreme Court of Rhode Island.

June 27, 2007.

Lynore Horn, pro se.

Neal J. McNamara, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

■ The United States District Court for the District of Rhode Island has certified a question of law to this Court pursuant to Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure.[1] The

---

1. Rule 6 of Article I of the Supreme Court Rules of Appellate Procedure provides in pertinent part:

  "(a) This Court may answer questions of law certified to it by * * * a United States

District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court

defendants in the underlying federal court civil action have moved for summary judgment, contending that the plaintiff's employment discrimination claims are time-barred. Before rendering a decision with respect to the defendants' motion, the District Court certified the following question to this Court:

> "What is the statute of limitations applicable to an employment discrimination claim asserted under the Rhode Island Civil Rights Act ('RICRA'), R.I. Gen. Laws 42–112–1 et seq.?" [2]

The plaintiff in the underlying federal court action, Lynore Horn, was employed in several capacities by defendants, Southern Gas Company and New England Gas Company, from approximately 1989 until 2005. It is not necessary for us to summarize the entire procedural history of this case to date. Rather, in view of the narrow question of law that we must answer, it suffices for us to note that there is pending before the federal court a pleading in which plaintiff alleges, in pertinent part, that defendants engaged in employment discrimination against her on the basis of sex in violation of both the Rhode Island Fair Employment Practices Act, G.L.1956 chapter 5 of title 28 (FEPA) and the Rhode Island Civil Rights Act, G.L. 1956 chapter 112 of title 42 (RICRA). Our role is limited to determining what statute of limitations applies to an employment discrimination claim asserted under the latter statute.

> and as to which it appears to the certifying court there is no controlling precedent in the decisions of this Court."

2. It is clear from the explicit text of the certified question that the case pending in the United States District Court relates to a claim of employment discrimination. Accordingly, we need not and do not address the issue of what statute of limitations is applicable to RICRA actions that do not involve employment discrimination claims.

## Statutory and Decisional Background

It was in 1949 that the General Assembly enacted the FEPA; it did so in order to "assure equal employment opportunities for all persons by eliminating discriminatory practices." *Folan v. State, Department of Children, Youth, and Families,* 723 A.2d 287, 290 (R.I.1999). Thereafter, in 1990, the General Assembly enacted the RICRA, which statute provides (*inter alia*) "broad protection against all forms of discrimination in all phases of employment." [3] *Ward v. City of Pawtucket Police Department,* 639 A.2d 1379, 1381 (R.I. 1994); *see also Folan,* 723 A.2d at 290. The protections against discrimination afforded by the RICRA are in many respects duplicative of those afforded by the FEPA; in many instances, an aggrieved party may assert the same employment discrimination allegations as the basis for both a FEPA claim and for a RICRA claim. The two statutes, therefore, are complementary employment discrimination statutes.

Unlike the FEPA, which contains a one-year statute of limitations (§ 28–5–17(a)), the RICRA is utterly silent as to the limitations period within which claims invoking that statute must be brought. In their brief concerning the certified question, defendants have taken the position that the one-year statute of limitations set forth in the FEPA should apply to RICRA claims and that, consequently, any of plaintiff's

3. The RICRA was enacted in reaction to the decision of the United States Supreme Court in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which the Court had narrowly construed 42 U.S.C. § 1981. *Ward v. City of Pawtucket Police Department,* 639 A.2d 1379, 1381 (R.I. 1994).

claims that accrued prior to the commencement of that one-year period are time-barred. By contrast, plaintiff contends that Rhode Island's residual statute of limitations for "injuries to the person," G.L.1956 § 9–1–14(b), which provides for a three-year limitations period, should be applied to her RICRA claim.[4]

The United States District Court for the District of Rhode Island and the United States Court of Appeals for the First Circuit have previously been faced with the issue of which statute of limitations should properly be applied to employment discrimination claims brought pursuant to the RICRA, and they have differed in their predictions as to which statute of limitations this Court would determine to be applicable. *Compare Rathbun v. Autozone, Inc.,* 361 F.3d 62 (1st Cir.2004) (applying the three-year residual statute of limitations for injuries to the person to claims raised pursuant to the RICRA) *with Rathbun v. Autozone, Inc.,* 253 F.Supp.2d 226 (D.R.I.2003) (applying the FEPA's one-year statute of limitations to claims raised pursuant to the RICRA) *and Place v. California Webbing Industries, Inc.,* 249 F.Supp.2d 157, 162 (D.R.I.2003) (same). We have previously noted the existence of that judicial difference of opinion without expressing our own view because we did not need to do so. *See Croce v. State, Office of Adjutant General,* 881 A.2d 75, 79 n. 6 (R.I.2005). Now, however, the question is squarely before us.

## Statutory Analysis

It is clear to us that, with respect to employment discrimination claims, the FEPA and the RICRA are *in pari materia*.[5] Both statutes were enacted to provide protection against discrimination in employment. Although both provide relief for those who successfully prove that they are the victims of employment discrimination, the FEPA and the RICRA are not identical twins. We need not exhaustively describe here the differences between the two statutes; it is sufficient to note that each statute incorporates some features and criteria that the other does not.[6] *See Berthiaume v. School Committee of Woonsocket,* 121 R.I. 243, 249, 397 A.2d 889, 893 (1979). For our purposes today, however, the crucial point is that each statute provides a basis for litigating a claim of employment discrimination.[7] *See Folan,* 723 A.2d at 290–91 (grouping the FEPA and the RICRA together as both providing remedies for employment discrimination). Since both the FEPA and the RICRA expressly deal with the subject of employment discrimination, in our view it is entirely appropriate to read the two statutes as being *in pari materia*—i.e. as necessi-

---

4.  General Laws 1956 § 9–1–14(b) states:

    "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after."

5.  The *in pari materia* canon of statutory interpretation has been succinctly defined in a helpful treatise as being a principle according to which "statutes on the same subject * * * are, when enacted by the same jurisdiction, to be read in relation to each other." Reed Dickerson, *The Interpretation and Application of Statutes* 233 (1975).

6.  For example, unlike the RICRA, the FEPA provides for administrative agency involvement before actual in-court litigation commences.

7.  The fact that this Court has employed the same methodological approach in evaluating the merits of employment discrimination claims raised pursuant to both the FEPA and the RICRA, without distinguishing between them, is a further indication that the two statutes are *in pari materia*. *See, e.g., DeCamp v. Dollar Tree Stores, Inc.,* 875 A.2d 13, 23 (R.I.2005).

tating that they "be read in relation to each other."[8]

■ It is an especially well-settled principle of statutory construction that when, as here, "we are faced with statutory provisions that are *in pari materia,* we construe them in a manner that attempts to harmonize them and that is consistent with their general objective scope." *State v. Dearmas,* 841 A.2d 659, 666 (R.I.2004); *see also Kells v. Town of Lincoln,* 874 A.2d 204, 212 (R.I.2005); *Folan,* 723 A.2d at 289–90; *In re Doe,* 717 A.2d 1129, 1132 (R.I.1998); *Kaya v. Partington,* 681 A.2d 256, 261 (R.I.1996); *State v. Ahmadjian,* 438 A.2d 1070, 1081 (R.I.1981). This is true even when "the statutes in question contain no reference to each other and are passed at different times." *Ahmadjian,* 438 A.2d at 1081; *see also Folan,* 723 A.2d at 289–90; *Blanchette v. Stone,* 591 A.2d 785, 786 (R.I.1991).

Since the FEPA and the RICRA are *in pari materia* with respect to employment discrimination claims, we must make every effort to harmonize the two statutes when determining what statute of limitations applies to employment discrimination claims raised pursuant to the RICRA.[9] It is our opinion that harmonization of these two statutes can best be achieved by engrafting onto the RICRA the one-year statute of limitations contained in the FEPA.

It is highly significant to us that the FEPA represents the only time that an enactment of the General Assembly has addressed with specificity the issue of how much time should be accorded to potential employment discrimination plaintiffs as they decide whether or not to seek relief for perceived wrongdoing. The FEPA reflects the General Assembly's weighing of policy considerations and its legislative judgment that one year is the appropriate amount of time within which claims of employment discrimination should be brought, and we would be most reluctant to second-guess that considered legislative determination. We are unable to perceive any adequate reason for not holding that the same legislative determination should be applied to the RICRA, bearing in mind that it is a later-enacted statute and (significantly) is silent as to the limitations issue.[10]

This Court has on several occasions also pointed to policy considerations that tend to validate the relatively brief limitations period that the General Assembly established with respect to FEPA claims. *See,*

---

**8.** Dickerson, *supra,* at 233.

**9.** The instant case involves an explicit limitations period in one statute (the FEPA) and the absence of any expressed limitations period in the other (the RICRA). In such circumstances, the task of harmonizing the two provisions is substantially easier than is the case where we are confronted with two apparently inconsistent statutory provisions. *See, e.g., Davis v. Cranston Print Works Co.,* 86 R.I. 196, 199, 133 A.2d 784, 786 (1957).

**10.** The fact that the FEPA contains an obligatory administrative process does not alter our conclusion that the one-year statute of limitations prescribed therein should also apply to claims raised pursuant to the RICRA. As we have stated, the policy justification for FEPA's requirement that an aggrieved party must file an administrative charge within one year of the alleged discriminatory acts is to enable prompt investigation of those acts. *See Roadway Express, Inc. v. Rhode Island Commission for Human Rights,* 416 A.2d 673, 676 (R.I. 1980). It is our view that the FEPA's one-year limitations period is not a product of the fact that said statute calls for administrative agency involvement; rather, it is a product of the General Assembly's judgment that inquiry into perceived employment discrimination should be conducted before the evidentiary trail grows cold. The fact that the RICRA contains no mandate concerning agency involvement does not make the need for prompt investigation of alleged violations any less compelling.

*e.g., Roadway Express, Inc. v. Rhode Island Commission for Human Rights,* 416 A.2d 673, 676 (R.I.1980) ("The time limit * * * also ensures that persons charged with violating the Act will receive notice of those charges within one year of the alleged violation. Prompt notification will enable such persons to investigate alleged violations and to preserve evidence * * *."); *Ferguson Perforating and Wire Co. v. Rhode Island Commission for Human Rights,* 415 A.2d 1055, 1056 (R.I.1980) ("These procedural protections are designed to provide respondents with adequate time for such matters as scheduling witnesses, hiring lawyers, and gathering and compiling evidence of the alleged violations before witnesses' memories of the incidents become too obscure.").

■ In addition, it is presumed that the General Assembly, when enacting a statute, is aware of earlier legislation. *See, e.g., Narragansett Food Services, Inc. v. Rhode Island Department of Labor,* 420 A.2d 805, 808 (R.I.1980) ("The legislature is presumed to know the state of existing relevant law when it enacts * * * a statute."); *see also Shelter Harbor Fire District v. Vacca,* 835 A.2d 446, 449 (R.I.2003); *Providence Journal Co. v. Rodgers,* 711 A.2d 1131, 1134 (R.I.1998). On the basis of this principle, we may take it as a given that, when the General Assembly enacted the RICRA in 1990, it did so with knowledge of the explicit one-year limitations period that is contained in the FEPA; and there is no reason to conclude that it thought that some other time period would be appropriate for employment discrimination actions under the RICRA.

■ It is also worth noting that, if we were to accept plaintiff's contention that the three-year residual statute of limitations applies to claims brought under the RICRA, rather than harmonizing the two statutes, we would in effect be rendering meaningless the one-year statute of limitations contained in the FEPA by allowing plaintiffs an end run around the limitations provision of the latter statute. Such a reading of the RICRA would be inconsistent with the principle that "repeals by implication are not favored." *Providence Electric Co. v. Donatelli Building Co.,* 116 R.I. 340, 344, 356 A.2d 483, 486 (1976); *see also Shelter Harbor Fire District,* 835 A.2d at 449. We perceive no evidence that the General Assembly had any such intention.

It logically follows from the foregoing that we need not in this instance grapple with the residual "injuries to the person" statute, § 9–1–14(b). In our judgment, even assuming *arguendo* that employment discrimination could be considered to be an injury to the person, we cannot ignore the fact that the General Assembly has *expressly* chosen (when it included a one-year limitations period in the FEPA) to treat employment discrimination differently from the way that it has treated certain other arguable injuries to the person.[11] Since the General Assembly has *specifically* focused on the issue of an appropriate time for the bringing of an employment discrimination action, our application of a venerable and often-invoked principle of statutory construction (viz., the principle that statutes that are *in pari materia* should be harmonized when possible) has convinced us that we are being true to the legislative intent in holding that the statute of limitations applicable to employment

---

11. There is precedent for the General Assembly's treating some injuries to the person differently from others. We note, for example, that, with respect to "[a]ctions for words spo-

ken," the General Assembly specifically opted for a one-year limitations period for such actions. Section 9–1–14(a).

discrimination claims asserted under the RICRA is one year.[12]

## Conclusion

For these reasons, we answer the question certified by the United States District Court for the District of Rhode Island by holding that the statute of limitations applicable to employment discrimination claims asserted under the Rhode Island Civil Rights Act is one year.

SUTTELL, J., with whom FLAHERTY, J., joins, dissenting.

The question certified to us by the United States District Court requests that we determine "the statute of limitations applicable to an employment discrimination claim asserted under the Rhode Island Civil Rights Act ('RICRA'), R.I. Gen. Laws § 42–112–1 et seq." The imposition of a statute of limitations is fundamentally a matter of policy, because it "inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). As such, it is more appropriately resolved by the General Assembly than by this Court.

The RICRA, however, is silent concerning the appropriate time within which to file a suit seeking vindication of a perceived civil rights violation. With respect to alleged discriminatory practices in the workplace, a claimant may choose to file a charge under the Rhode Island Fair Employment Practices Act, G.L.1956 chapter 5 of title 28 (FEPA), file a civil action under the RICRA, or indeed, as is common practice, file under both the FEPA and the RICRA. Nevertheless, the two statutes stand as distinct and independent avenues of redress, each with a related, yet differing, focus. Because I am of the opinion that in the absence of clear legislative direction, both state and federal precedent weigh in favor of a uniform limitations period for all claims filed under the RICRA, I do not believe that the importation of the FEPA's one-year limitations period to claims asserted under the RICRA is warranted. Accordingly, I respectfully dissent.

As the majority addressed, the RICRA was enacted in response to *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which the Supreme Court narrowly interpreted 42 U.S.C. § 1981, The Civil Rights Act of 1866, by holding that that statute afforded protection against race discrimination in contract formation only.[13] *See*

12. It should go without saying that we have very carefully weighed the First Circuit's thoughtful opinion in *Rathbun v. Autozone, Inc.*, 361 F.3d 62 (1st Cir.2004), in which that highly respected court vaticinated as to how this Court might resolve the instant statute of limitations issue. Nevertheless, while we readily acknowledge the cogency of much of the First Circuit's reasoning in this regard, ultimately we were not persuaded by it. The correct answer to the question certified to us by the District Court is by no means self-evident, and we have considered the competing arguments with great care. In the end, however, especially in view of our numerous prior decisions employing the *in pari materia* canon of statutory construction, we are un-

able to agree with the First Circuit's conclusion that a three-year limitations period for employment discrimination actions brought under the RICRA would effectuate the legislative intent.

13. At the time the Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), 42 U.S.C. § 1981 (1988) read:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

*Ward v. City of Pawtucket Police Department,* 639 A.2d 1379, 1381 (R.I.1994). Although the General Assembly incorporated nearly identical language to that used in 42 U.S.C. § 1981 in its enactment of the RICRA, the statute adopted a more expansive definition of contractual rights than its federal counterpart did under the *Patterson* Court's interpretation. *Compare* 42 U.S.C. § 1981 (1988) (language employed by RICRA drafters) *and Patterson,* 491 U.S. at 164–65, 109 S.Ct. 2363 (interpreting language of 42 U.S.C. § 1981 as applying to contract formation only) *with* G.L.1956 § 42–112–1(b) (defining language borrowed from federal counterpart to expand protection afforded).[14] The Rhode Island statute defines those rights to include "the making, performance, modification and termination of contracts * * * and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships." Section 42–112–1(b). Additionally, the RICRA surpassed its federal counterpart by expanding protection to "instances of discrimination based on age, sex, religion, disability, and national origin." *Rathbun v. Autozone, Inc.,* 361 F.3d 62, 67 (1st Cir.2004). As a result, the RICRA "provides broad protection against all forms of discrimination * * *," *Ward,* 639 A.2d at 1381, and defines the rights to which all persons are entitled:

"(a) All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

"(b) For the purposes of this section, the right to 'make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property' includes the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships." Section 42–112–1.[15]

As the First Circuit Court of Appeals has observed, "The contours of the RICRA plainly reveal the General Assembly's overarching intent to craft a broad civil rights act that would both complement and

---

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." In 1991, Congress amended § 1981 to include subsections (b) and (c). Pub.L. 102–166, § 101 (1991). Subsection (b), as it reads today, addresses the *Patterson* decision: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (2000).

**14.** General Laws 1956 § 42–112–1 also incorporated language from 42 U.S.C § 1982 (1988).

**15.** Section 42–112–1 contains two additional subsections:

"(c) Nothing contained in this chapter shall be construed to affect chapter 14.1 of title 37, chapter 5.1 of title 28 or any other remedial programs designed to address past societal discrimination."

"(d) For the purposes of this section, the terms 'sex', 'disability' and 'age' have the same meaning as those terms are defined in § 28–5–6, the state fair employment practices act."

supplement federal civil rights protections." *Rathbun,* 361 F.3d at 67.

In light of the statute's avowedly remedial purpose, I would apply the statute of limitations set forth in G.L.1956 § 9–1–14(b), which provides "[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after." This Court has held that the legislative intent behind § 9–1–14(b) was to enact a comprehensive statute that included "all actions that reasonably could be viewed as arising out of injuries to the person." *Commerce Oil Refining Corp. v. Miner,* 98 R.I. 14, 19, 199 A.2d 606, 609 (1964) (*Commerce Oil*). In that case we stated that:

> "the phrase 'injuries to the person' * * * is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." *Id.* at 20–21, 199 A.2d at 610.

Since the *Commerce Oil* decision, we have had the opportunity to more specifically articulate injuries that fall under the umbrella of § 9–1–14(b) on multiple occasions. In *Lyons v. Town of Scituate,* 554 A.2d 1034, 1036 (R.I.1989), we noted that:

> " 'Injuries to the person' * * * encompasses actions for written defamation or libel, *Mikaelian v. Drug Abuse Unit,* 501 A.2d 721 (R.I.1985); actions for injuries to personal dignity, *Partin v. St. Johnsbury Co.,* 447 F.Supp. 1297 (D.R.I.

1978); civil rights actions under 42 U.S.C. § 1983, *Walden, III, Inc. v. State of Rhode Island,* 576 F.2d 945 (1st Cir. 1978), and grievance suits by a union member for failure of the union to represent him fairly, *McDonald v. Rhode Island General Council,* 505 A.2d 1176 (R.I.1986)."

Of particular significance is our adoption in *Lyons* of the principles espoused in the federal case, *Partin v. St. Johnsbury Co.,* 447 F.Supp. 1297 (D.R.I.1978). In *Partin,* the United States District Court for the District of Rhode Island addressed the issue of the appropriate limitations period applicable to the plaintiff's federal 42 U.S.C. § 1981 employment discrimination claim. *Partin,* 447 F.Supp. at 1298–99. Utilizing our holding from *Commerce Oil,* the court acknowledged that the phrase "injuries to the person" was not limited strictly to physical injuries; rather, § 9–1–14(b) was held to cover "injuries to personal dignity" as well. *Partin,* 447 F.Supp. at 1300. The court went on to adopt a tort characterization for 42 U.S.C. § 1981 employment discrimination actions, concluding that § 9–1–14(b) was the appropriate limitations period for plaintiff's action. *Partin,* 447 F.Supp. at 1301.

This Court unquestionably has declared that federal civil rights violations constitute an injury to the person. *See, e.g., Paul v. City of Woonsocket,* 745 A.2d 169, 171–72 (R.I.2000) (§ 9–1–14(b) appropriate limitations period for civil rights violation brought in accordance with 42 U.S.C. § 1983); *Lyons,* 554 A.2d at 1036 (accepting violation of 42 U.S.C. § 1981 constitutes an injury to personal dignity subject to § 9–1–14(b)'s limitations period); *Church v. McBurney,* 513 A.2d 22, 25–26 (R.I.1986) (acknowledging federal case law holding violations of §§ 1981 and 1983 constitute an injury to the person); *Mikaelian,* 501 A.2d at 724 (equating right to be

free from defamatory statements with rights protected under §§ 1981 and 1983, which are considered injuries to the person). It follows then that a violation of rights protected under the RICRA—which employs language almost identical to that of its federal counterpart—also would constitute an injury to the person. Because the General Assembly is "presumed to know the state of existing relevant law when it enacts or amends a statute," *Narragansett Food Services, Inc. v. Rhode Island Department of Labor*, 420 A.2d 805, 808 (R.I.1980); *see also Aust v. Marcello*, 112 R.I. 381, 387, 310 A.2d 758, 761 (1973), it is reasonable to impute to the General Assembly knowledge of § 9–1–14(b)'s applicability to § 1981 claims when it enacted the RICRA in 1990.

In the same respect, it is also "reasonable to presume that the RICRA's drafters, who modeled the statute after section 1981, must have been aware of the precedents interpreting the federal statute and must have intended the state law to trigger the same limitations period." *Rathbun*, 361 F.3d at 67; *see also Narragansett Electric Co. v. Rhode Island Commission for Human Rights*, 118 R.I. 457, 459–60, 374 A.2d 1022, 1023 (1977) (acknowledging persuasive authority of federal decisions interpreting statutes with language similar to Rhode Island statutes). In *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the United States Supreme Court squarely held that § 1981 claims were subject to the relevant state statute of limitations governing personal injury claims. *Goodman*, 482 U.S. at 660–62, 107 S.Ct. 2617 (reasoning that § 1981 is part of a federal law barring racial discrimination, which is a "fundamental injury to the individual rights of a person"), *superseded by* 28 U.S.C. § 1658(a) (2000) (adopting a uniform four-year statute of limitations period for causes of action or claims created by an Act of Congress after December 1, 1990); *see also Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (borrowing the statute of limitations associated with a state's administrative employment discrimination statute inappropriate for claims brought under the Civil Rights Act).

Although the certified question now before this Court involves the appropriate limitations period solely for employment discrimination claims brought under the RICRA, by importing the FEPA's one-year limitations period to these claims, the Court now has created precedent for dividing the RICRA into subclasses in which different rules of timeliness may apply, depending on the context of the claim. *Cf. Rathbun*, 361 F.3d at 69 n. 2 ("In the face of a silent statute, it would be surpassingly difficult to presume an intent to divide RICRA claims into subclasses so that different rules of timeliness would apply depending on the context."). This division conflicts with this Court's previous acknowledgement that "it was the intent of the legislature that all injuries to the person be subjected to the same period of limitations." *Paul*, 745 A.2d at 172 (quoting *Nappi v. John Deere & Co.*, 717 A.2d 650, 651 (R.I.1998) (mem.)). In *Paul*, this Court looked to federal precedent to determine that the three-year limitations period in § 9–1–14(b) applied to claims filed under 42 U.S.C. § 1983. *Paul*, 745 A.2d at 171–72. We noted that the Supreme Court previously had "concluded that § 1983 confers 'a general remedy for injuries to personal rights.'" *Paul*, 745 A.2d at 171 (quoting *Wilson v. Garcia*, 471 U.S. 261, 278, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), *superseded by* 28 U.S.C. § 1658(a) (2000)).

In *Wilson*, the Supreme Court discussed the importance of uniformity and certainty in the application of a statute of limitations

to all § 1983 actions, and concluded that "a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose." *Wilson,* 471 U.S. at 272, 105 S.Ct. 1938. The Supreme Court eschewed an approach in which the applicable limitations period depended on "the particular facts or the precise legal theory of each claim." *Id.* at 274, 105 S.Ct. 1938. For reasons identical to those stated in *Wilson,* the Supreme Court later held that a single state statute of limitations governing personal injury actions was also appropriate for all § 1981 claims. *Goodman,* 482 U.S. at 662, 107 S.Ct. 2617. Considering the plentiful authority that supports the application of § 9–1–14(b)'s three-year limitations period to civil rights violations in Rhode Island,[16] I believe that the Court, in the absence of express direction from the General Assembly, should not impose a limitations period that applies only to a subset of claims under the RICRA.

Further, I believe there is a significant functional distinction between the two statutory means of redress provided under the FEPA and the RICRA. The FEPA establishes an administrative process that by its very nature is informal, investigatory, and conciliatory. Section 28–5–17. Contrariwise, the RICRA contemplates a civil action. Section 42–112–2. Under the FEPA, an aggrieved person may not proceed initially in court, but must first present an administrative charge to the Rhode Island Commission for Human Rights (commission) within one year of the alleged wrongful employment act. Section 28–5–17(a). The commission then is required to investigate and "endeavor to eliminate the unlawful employment practices by informal methods of conference, conciliation, and persuasion * * *." Sec-

tion 28–5–17(b). If the commission fails to obtain voluntary compliance, it may issue a complaint against a respondent within two years of the original charge, and proceed to an evidentiary hearing. Section 28–5–18. If the commission determines that the respondent did engage in an unlawful employment practice, remedies may include an order to cease the unlawful practice, reinstatement, back pay, and "[i]n appropriate circumstances" attorneys' fees and other litigation expenses. Section 28–5–24. The opportunity to proceed in court arises only if the commission is unable to secure a settlement agreement from the parties and hearings before the commission have not already commenced. Section 28–5–24.1(a). A temporal limitation further restricts the right to sue: "[a] complainant may ask for a right to sue in state court if not less than one hundred and twenty (120) days and not more than two (2) years have elapsed from the date of filing of a charge." *Id.*

Alternatively, § 42–112–2 of the RICRA provides in pertinent part that "[a] person whose rights under the provision of § 42–112–1 have been violated may commence a civil action for injunctive and other appropriate equitable relief, and for the award of compensatory and exemplary damages." A prevailing plaintiff may also receive the costs of the litigation and reasonable attorneys' fees. Section 42–112–2. Significantly, § 42–112–2 contains "no language requiring, or even suggesting, that a plaintiff must first exhaust any or all administrative remedies before filing a civil action [under the RICRA]." *Ward,* 639 A.2d at 1382. Any action, therefore, brought under the RICRA, including employment actions, requires clearance of none of the

---

**16.** *See also Rathbun v. Autozone, Inc.,* 361 F.3d 62, 66 (1st Cir.2004) ("When a rights-creating statute is silent as to what limitations period should apply, the Rhode Island Supreme Court's practice has been to look first to residual statutes of limitations.").

administrative hurdles required under the FEPA. *See id.*

Finally, I disagree with the Court's conclusion that harmonization of the RICRA and the FEPA, as the principle of *in pari materia* instructs, is best accomplished by applying the FEPA's one-year limitations period to employment discrimination claims brought under the RICRA. To support this proposition, the majority indicates that on several occasions this Court has articulated certain policy considerations that validate the brief limitations period associated with the FEPA. *See, e.g., Roadway Express, Inc. v. Rhode Island Commission for Human Rights,* 416 A.2d 673, 676 (R.I.1980); *Ferguson Perforating and Wire Co. v. Rhode Island Commission for Human Rights,* 415 A.2d 1055, 1056 (R.I.1980). The FEPA, however, is not the only legislative enactment that articulates a limitations period for employment discrimination claims. The Rhode Island Whistleblowers' Protection Act, G.L.1956 chapter 50 of title 28, which provides a cause of action for discrimination against employees who participate in certain employment related activities, specifies a three-year statute of limitations. *See* §§ 28–50–3 and 28–50–4. In light of the question now before this Court, it is particularly noteworthy that a claimant (in specific instances) can seek redress for an employer's discriminatory conduct under the FEPA, which specifies that a claimant file a charge within one year of the employer's alleged wrongful conduct, *and* also under the Whistleblower's Protection Act, which gives a claimant three years to file a civil action for this same conduct. *Compare* § 28–5–7(5) (protecting employee who has testified or assisted in an investigation or hearing under G.L.1956 chapter 5 of title 28) *and* § 28–5–17 (requiring an aggrieved employee to file charge with commission within one year) *with* § 28–50–3 (protecting employee who participates in an investigation or hearing held by a public body) *and* § 28–50–4 (requiring a person alleging violation of act to bring action within three years).

Rather than harmonize the two statutes, the application of the FEPA's one-year limitations period to claims filed under the RICRA might well undermine and frustrate the FEPA's laudatory goals of conciliation and settlement. In construing the relationship between Title VII, the federal analogue to the FEPA, and an action under § 1981, the federal counterpart to the RICRA, the Supreme Court said:

"We recognize, too, that the filing of a lawsuit might tend to deter efforts at conciliation, that lack of success in the legal action could weaken the Commission's efforts to induce voluntary compliance, and that a suit is privately oriented and narrow, rather than broad, in application, as successful conciliation tends to be." But these are the material effects of the choice Congress has made available to the claimant by its conferring upon him independent administrative and judicial remedies. The choice is a valuable one. * * * We are disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted * * *.

"We generally conclude, therefore, that the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *Johnson,* 421 U.S. at 461, 95 S.Ct. 1716.

Any discussion of a statute of limitations necessarily involves a balancing of interests: the societal and individual interest in

the vindication of substantive rights against the like interest in the prompt resolution of all claims. I readily acknowledge the compelling reasons favoring a relatively short limitations period in the employment arena. When, as here, the General Assembly has failed to provide a specific statute of limitations, however, the question for the Court to resolve is one of statutory construction. In its reasoned analysis, the majority has used the doctrine of *in pari materia*, a reliable and trusted canon of statutory construction, to discern legislative intent to engraft the FEPA's one-year limitations period onto employment discrimination actions filed under the RICRA. I come to a contrary conclusion because, in my opinion, both state and federal precedent weigh heavily in favor of a uniform and certain limitations period for all claims under the RICRA. In the employment context, the FEPA and the RICRA may coexist with distinct timeliness requirements, yet without any undue dissonance, each serving its expressed purpose: *i.e.*, with respect to the FEPA, "to foster the employment of all individuals in this state in accordance with their fullest capacities * * * and to safeguard their right to obtain and hold employment without * * * discrimination," § 28–5–3; and under the RICRA, to provide compensatory and/or injunctive relief to those people "whose civil rights have been violated." *Rathbun*, 361 F.3d at 69 (quoting *Burnett*, 468 U.S. at 53, 104 S.Ct. 2924). In the absence of clear direction from the General Assembly, therefore, I would apply the residual limitations period set forth in § 9–1–14(b).

Accordingly, I would answer the certified question of the United States District Court by stating that the three-year limitations period set forth in § 9–1–14(b) applies to employment discrimination claims asserted under the RICRA.